Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Niels Frenzen for Petitioner Ronald Zetino. I would like to focus on the issue of exhaustion of administrative remedies, which the government has indicated. Hang on a second, Counsel. We've got a slight pencil shortage up here. Thank you. Mr. Brown, would you set the clock back to ten so we can give Counsel his full allocated time? You may proceed. Thank you, Your Honor. I'd like to start with the exhaustion issue, which the government has raised in regard to the petitioner. And as doubtlessly the Court knows, Mr. Zetino is an immigrant. He does not speak English well. He's used a Spanish interpreter at all times before the six-and-a-half years of immigration court proceedings that occurred at all times in different detention facilities. His notice of appeal to the Board of Immigration Appeals is admittedly broadly written, but it's our position that it is poorly drafted, if done by Counsel, but adequate in light of the fact that it was done by a Spanish-speaking respondent without Counsel. Mr. Frenzen, I can certainly ask Government Counsel this question, but given the fact that the Board actually addressed the issues that you're pressing on appeal, it seems to me that the agency had an opportunity to review the merits of the claim. And to the extent that the exhaustion doctrine is intended to give the agency the first bite of the apple, as far as this judge is concerned, they had their chance. But let me ask a harder question. If we reach the merits, why doesn't Elias Zacharias directly control the resolution of the claim? Well, I think the response to that, Your Honor, is the fact that the record is poorly developed. We think the record is adequate. We think there is a basis for finding that Zetino faced persecution, in terms of what happened to his family members, on account of these two different theories of social group, one of them being family, which this Court in Sanchez-Trujillo has identified as the prototypical social group. But the problem was, as I understand it, and my last question may have confused this case with another immigration case, the problem here wasn't there was no direct persecution as to him, and there was some kind of an undefined motive for the robbery of family members. There was an undefined motive in regard to the robbery of family members and the mass killing of family members. I admit that our argument on the substantive claim to asylum and withholding is weak. Our stronger argument is based upon the fact that this record was not adequately developed before the immigration judge because of due process liability. Well, the burden is his, is it not? The burden of proof is his in order to establish entitlement to refugee staff. It is most definitely the burden of proof is on the asylum applicant. He is entitled, however, to representation by counsel at no expense to the government. The immigration court that resumed his proceedings in the San Pedro Detention Center down in the Long Beach San Pedro Harbor failed to comply with an immigration court regulation that mandates immigration judges to advise respondents of the availability of free legal services. But I thought the case had been pending for six and a half years. So you're saying that's not enough time? He was advised when he had his first appearance six and a half years ago of his entitlement to counsel. He was advised in 2001 when this case began and then over the course of almost six and a half years when his case resumed after two lengthy interruptions, a four-year interruption and then an 18-month interruption. Part of the interruption because he was in California State Prison, is that it? Part of the interruption was because the government believed he might be eligible for other immigration benefits under the so-called American Baptist Church's case, temporary protection. Was he doing some prison time? Definitely. He has several criminal convictions relating to controlled substance, possession of controlled substance, and there are several other less serious convictions. The removal charges in this case, which we conceded or which he conceded, were alien, who was present in the United States without admission. He was never placed under removal proceedings as a result of the drug convictions. The immigration judge found that the drug possession charges did not bar him from asylum. But coming back to Your Honor's question, the record was not developed well in this case because he was not able after this almost six-year hiatus from the beginning of his proceedings in 2001 when he was advised of his right to counsel, when he was apparently given a free legal services list for a different court. The proceedings began in Lancaster in the high desert here in Southern California. The Lancaster court is over 100 miles away from the San Pedro court where his case resumed six years later. There was simply no reason, no reasonable reason, why the immigration judge should not have re-ascertained that he understood what an immigration judge told him six years earlier and given him a list, a new list of free legal services lists. But are we to assume that if he was advised when the immigration proceedings began that he had entitlement to counsel and given what I think you would have to concede is more than adequate time to engage the services of a lawyer, that he bears no responsibility for the fact that he wasn't represented six-and-a-half years later when he finally got a hearing on the merits? He certainly bears some responsibility, but I think this is where the hiatus, the interruption in the proceedings comes into play. I understand the explanation for it, but you're urging us to declare that this is a due process violation, and I'm having a hard time squaring that with his role in establishing the violation. When he is taken back into custody for the, I believe, the second occasion, if not the third occasion, by Immigration and Customs Enforcement in 2007, before these proceedings resumed, there was not an extended delay. There was one hearing where the judge accepted the asylum application that had previously been filed and then set the case over for a hearing on the merits. If I could address what we believe are continuing due process violations before the Board of Immigration Appeals, Mr. Zettino did ultimately secure counsel. Admittedly, he secured counsel after the Immigration Court had concluded the proceedings in this case, but he did secure counsel who was in an effort to try to represent him in his administrative appeal to the Board of Immigration Appeals. And as the Court doubtlessly knows from the record, the Board of Immigration Appeals refused to accept the, denied a motion to accept a late filed brief in this case. So there was, albeit, a late, a delayed opportunity, a delayed securing of counsel by Mr. Zettino, but he did continue to make efforts, even though he had been transferred to Texas a thousand miles away from Los Angeles. Didn't they give him a 30-day extension to file that brief after he was transferred to Texas? A 21-day extension, Your Honor. The briefing schedule for, that the Board granted to Mr. Zettino after he had been transferred to Pearsall, Texas, South Texas, was 21 days. And again, as this Court has noted, we cite the case in our reply brief, Rand v. Roland. This Court has taken notice of the difficulty that pro per prisoners face when they are attempting to advocate their rights in court. Twenty-one days to file a brief might be adequate for someone who is not in custody, for someone who was moved without his telephone numbers, his legal file, from San Pedro to South Texas, with a briefing schedule being set, communicating, a 21-day briefing schedule being reset, communicating with counsel back in Los Angeles, where his immigration court proceedings took place, not a reasonable period of time. This is a great example, focusing on the Board of Immigration Appeals, of the BIA's efforts to decide cases at a rapid rate with the one-judge board members, one-judge board panels. This is why the Court is receiving so many of the immigration cases. The Board had knowledge. Is there anything in the record as to how many cases were pending before the BIA at the time they denied the late-filed brief? Not in this record, no. I'm sure the Court can take notice of the fact that it's a challenging process. I mean, we know that there are lots of them, because to the extent they haven't transferred them to us, they're sitting on a big pile that we're waiting to receive. Right. But in regard to the unreasonableness of the Board not allowing a short opportunity to resubmit a brief, the Board further compounded the denial of his due process, constitutional due process and statutory due process rights to counsel to better present his case. Okay. I want to save some time for that. Yeah, please. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Sana Lee representing the Attorney General, the Respondent. You'll have to speak up. I cannot hear you. Okay. Sorry. Sana Lee representing the Respondent, the Attorney General. First of all, I would like to raise the issue of exhaustion, because the petitioner did not exhaust his administrative remedies regarding the due process claim, as Judge Tallman discussed earlier. Even though he was pro se at the time that he filed his notice to appeal, he really did not raise any claim regarding a due process violation. The only claim that he raises in the notice of appeal is the merits of his asylum withholding and CAT claims, and that's all that he challenged for the Court to review those due process claims. Furthermore, even if you do reach the merits of the due process claims, the petitioner has failed to establish that his proceedings were fundamentally unfair. Even though there were some years that passed between the first proceedings and the proceedings after the administrative closure, the first IJ did give him all of his rights about his right to counsel, gave him the list of free legal service providers, told him about the procedures that he would face during the removal proceedings, notified him of his right to present witnesses and present evidence on his behalf. So the IJs fully gave him all of his notices, and there was no fundamental unfairness. And even if there was unfairness, the petitioner can't establish prejudice in his case, because as Judge Tallman noted, there is no nexus here. The petitioner doesn't know who killed his family members, and there is no indication in the record that he ever knew the motive for the killings. So all of it was based on hunches and hints and information from his mother. And his mother also testified about the killings, because she was apparently in El Salvador when the killings took place, but she herself did not know exactly why the killings took place. And that's the key in this case, is that there's no nexus. She also guessed that the killers killed her family members to get the grandfather's land, or maybe out of revenge. So even if she did know that those were the actual reasons, those would not be a basis for asylum, because you have to establish that it's either based on race, religion, particular social group, political opinion. And he was not able to establish any of those. And as far as the late brief issue, the government would argue that there's no meaningful standard to evaluate such a claim, because the regulations don't give any sort of guidance as to how to evaluate those. And even if the court did have jurisdiction, the board here did not abuse its discretion in denying the late brief, because the board did actually give the petitioner more time to file his brief, even though he didn't ask for an extension. He just filed the change of address form, and the board on its own decided to extend his brief deadline. And so even after it gave him more time to file the brief, he was unable to file a brief on time. And the board did take into consideration that the petitioner was in detention, and it noted that in its denial of his motion to accept the late brief. But petitioner did not ask for an extension of time. Rather, he just filed a motion out of time, maybe two weeks after the deadline had passed. And so the board did not abuse its discretion in denying that late brief request. Counsel, how do you distinguish our decision in Diaz-Covarrubias v. Mukasey, which seems to assume that we do have jurisdiction to reach this issue? I'm not familiar with that case, that concerns a late brief. Is that correct? Yes. Let's see. It is at 551 F. 3rd, 1114. I'm sorry. I may have misspoken. It's actually, the one I had in mind was Singh v. Ashcroft. Singh. Yeah, which is at 362 F. 3rd, 1164. Right. I believe in that case, the board sent the briefing schedule and transcript to the wrong address. Correct. So I think that in that case, maybe there's some validity to the claim that there was a due process violation. But in this case, the board sent the briefing schedule and the transcript to the correct address after the petitioner filed his address form, the new address form. Well, that answer addresses the merits of the due process argument, not the jurisdictional argument. Correct? Excuse me? You are answering by distinguishing the case, suggesting that on the merits, it's different. Right. Yes, Your Honor. It doesn't address the jurisdictional question, does it? No, Your Honor. No, that was the merits of the... Yeah, Singh, I think, is the case in which this court assumed that it did have jurisdiction to reach that. And are you able to distinguish that? I'm sorry? Are you able to distinguish that? That the court... Had jurisdiction and reached the merits. Right. Right. Well, I think that it's possible that you could establish a due process violation based on, let's see, I'm sorry, the board's denial of a late brief request. But... The standard would be simply whether the action would be fundamentally unfair, wouldn't it? Right, Your Honor. So that's a standard that is ascertainable, is it not? Right. My jurisdiction argument was based on the petitioner's claim that the board abused its discretion. I think we're talking about the same thing. I'm not sure you're answering Judge Lawson's question. The problem that we're having is that Singh v. Ashcroft seems to assume, notwithstanding decisions such as Kovarubias, which says that there aren't any meaningful standards that we can look to to decide whether or not the board has abused its discretion. That didn't seem to slow down our panel in Singh. And you're arguing the Kovarubias line of cases, but we have a conflict here. We've got one case that says we do have jurisdiction. So how do you distinguish it in order to prevent us from reaching the merits of the late filed brief claim? I could address that. That's a question to you, counsel. Right, Your Honor. So I would like you to address it right now. Well, Your Honor, I'm sorry, I can't. So you can't help me with that one? No, I think I would need to read that case that you're talking about because I'm not familiar with that case. All right. Do you have anything else that you want to say? Just basically that even if you did reach the merits of his claim, that there's no nexus to an established ground. And so even with all of the due process claims, there's no prejudice. And I think, yes. Okay. I'll rest on the briefs, thank you. Very well. Thank you very much. Counsel, you have one minute for rebuttal. Thank you, Your Honor. Bruce Lee, in regard to Kovarubias, that did not deal with brief filing procedures. It dealt with the board's. It was an administrative closure case, right? And the board's discretion. I believe it was the board's authority to sua sponte reopen cases. And so the court did in that case find there was not adequate guidance in regard to. What guidance do we look to in your case to determine whether the board has abused its discretion? Simply that. It's an abusive discretion standard. That's circular reasoning. You're answering the question with the standard, and I'm asking you where do I look to determine what the factors are that underlie the standard. Our response would be whether or not the board's decision was fundamentally fair or not. So you're saying your argument is abusive discretion, but we must equate it with a due process violation, is that what you're saying? Yes. Yes. And we believe the regulation, we believe the board should have taken into account the fact that he was detained, the fact that he had been moved to a new detention facility where free legal services were not available, the fact that he had obtained a lawyer in the middle of the briefing schedule. And what case best supports the argument that we look to fundamental unfairness as the standard? I can't respond to that. I think. The penumbra within the due process. Yes. Yes. And I think also this Court's jurisprudence in regard to recognizing the difficulties that pros, say, prisoners have when they're detained. But the problem is that we've got a line of cases, Kovarubis is one of them, in which they cite to the Supreme Court decision in Heckler, which reminds us that unless courts can look at some standard, either established by a statute or a regulation, or perhaps an internal agency policy and a manual, that we don't have any standard by which we can address the abuse of discretion, and therefore we don't have jurisdiction. And neither one of you are helping me very much on trying to resolve the conundrum here, but I guess you do the best you can. Right. No. And could I make one other point in regard to. Sure. You're already a minute over. Go ahead. Even if the Court doesn't find that there's been a right to violation of counsel before the Immigration Court, the immigration judge was still under an obligation to assist a pro per litigant with developing the record. In this case, age him in. But that argument wasn't made to the BIA, was it? That is a problem for an exhaustion. It was. Our argument is that it was made in this broadly, poorly drafted notice of appeal where Mr. Zatino said he disagreed with the immigration judge's decision. Thank you, Judge. Thank you. Thank you both, counsel. The case of Zatino v. Holder is submitted.
judges: Lawson, Hall, Tallman